**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR S-02-0468-MCE-CMK |
| Respondent, | CIV S-06-1381-MCE-CMK |
| vs. | FINDINGS AND RECOMMENDATIONS |
| N. ALLEN SAWYER, | |
| Movant. | |

Movant, a federal prisoner proceeding with counsel, brings this motion to correct or set aside a criminal judgment pursuant to 28 U.S.C. § 2255. Pending before the court is respondent's motion to dismiss (Doc. 591 in the criminal docket), filed on August 21, 2006. Through counsel, movant filed an opposition on September 15, 2006.

///
///
///
///
///
///

1

## I.  BACKGROUND

Movant pleaded guilty pursuant to a written plea agreement to "honest services mail fraud," in violation of 18 U.S.C. §§ 1341 and 1346.  As set forth in the plea agreement and restated by movant in his § 2255 motion, the underlying facts are as follows:

> 1. . . . Allen Sawyer was an official with the State of California, specifically, Chief Deputy Director of the California Office of Criminal Justice Planning (OCJP).  In that capacity, he owed a duty to the citizens of California to perform his job impartially and free from deceit, fraud, dishonesty, and self-enrichment. [. . .]
> 2. Beginning in February 2001, and continuing into November 2001, the defendant knowingly participated in a scheme and artifice to defraud the citizens of California of his duty of honest services as an OCJP official.  Pursuant to that scheme, the defendant, together with defendants Monte McFall and Sheriff Baxter Dunn, formed business ventures, MSD Ventures and SMTM Partners, which engaged in activities on behalf of Sunlaw Energy Corporation for the purpose of the defendants' joint personal financial gain.  During the period from February through November 2001, these activities included lobbying officials with the City of Stockton, the Port of Stockton, and San Joaquin County on behalf of Sunlaw and against Sunlaw's industry rivals in connection with Sunlaw's efforts to build a power plant in San Joaquin County.
> 3. In the course of his activities on behalf of Sunlaw, the defendant misused his official position in State Government by attempting to influence San Joaquin County officials and agencies to take official actions that would benefit Sunlaw.  Specifically, he attended meetings with officials in San Joaquin County during the workday, distributed his official State business card, stated or knowingly implied that he was representing the interest of the State, and deliberately failed to disclose that he was acting in fact on behalf of Sunlaw because he had a personal financial arrangement with Sunlaw that would have earned him substantial fees if it had been successful in building a plant in San Joaquin County.
> 4. Defendant Sawyer also participated in official OCJP actions relating to the award of federal funds to the San Joaquin County Sheriff's Office without disclosing that he had entered into a personal business venture with the San Joaquin County Sheriff.
> 5. Contrary to the State disclosure regulations . . . he failed to disclose on his 2001 Statement of Interest, on Form 700, that he had become a principal in MSD Ventures and SMTM Partners, which were profit-seeking ventures with defendants McFall and Dunn.
> 6. By virtue of the foregoing conduct, the defendant engaged in a scheme to deprive citizens of California of his duties of honest services.  In furtherance of that scheme, between on or about April 15 and May 4, 2001, defendant Sawyer caused co-defendant McFall to send by U.S. mail a statement by Domestic Stock Corporation relating to MSD Ventures, Inc., from a location in San Joaquin County to the California Department of Corporations located in Sacramento County.

The plea agreement also contains the following waiver:

> . . . The defendant understands that the law gives him a right to appeal his conviction sentence.  He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case as long as he is sentenced at an offense level no higher than 15.
> The defendant also gives up any right he may have to bring a post-conviction attack on his conviction or his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

Movant was sentenced on June 7, 2005, to six months in prison, six months house arrest with electronic monitoring, and three years of supervised release.  At the sentencing hearing, movant acknowledge his wrongdoing, stating:

> I just want to indicate that I sincerely apologize to this Court by very bad misjudgment.  I'd like to think I've already learned from the mistake and will continue to do so, and just that I offer my sincere apologies.

In his § 2255 motion, movant challenges the underlying conviction, arguing that he is "factually innocent" because the facts recited in the plea agreement do not constitute honest services mail fraud in violation of §§ 1341 and 1346.  Specifically, movant states that honest services fraud exists where:  (1) a legislator was paid for a particular decision or action; or (2) a public official fails to disclose a conflict of interest resulting in personal gain.  As to the latter, movant asserts that the conflict must involve a matter over which the official had discretionary decision-making authority.  Movant does not challenge the underlying facts.  Nor does movant challenge the validity of the plea agreement.

/ / /

/ / /

/ / /

/ / /

## II. DISCUSSION

Respondent argues that movant's § 2255 motion should be dismissed because: (1) movant waived the right to file a § 2255 motion; and (2) movant procedurally defaulted on his claim by not raising it on direct appeal.

### A.    Waiver

Respondent argues that the § 2255 motion should be dismissed because movant waived his right to bring a collateral challenge, including a § 2255 motion, and the waiver is valid and enforceable. Movant opposes respondent's motion on the basis that his § 2255 challenge falls outside the scope of the waiver. In particular, movant argues that the trial judge made oral pronouncements concerning the waiver which supercede the express terms of the plea agreement.

A waiver contained in a valid plea agreement is enforceable and deprives the court of jurisdiction. See Unites States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000); see also United States v. Abarca, 985 F.2d 1012 (9th Cir. 1992). A plea agreement is valid if it is entered into knowingly and voluntarily. See United States v. Kaczynski, 239 F.3d 1108 (9th Cir. 2001). The scope of the waiver is "demonstrated by the express language of the plea agreement." Anglin, 215 F.3d at 1066.

Whether a plea agreement was made "knowingly and voluntarily" depends on the circumstances surrounding its signing and entry. See Anglin, 215 F.3d at 1066 (citing United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991)). While a plea colloquy pursuant to Federal Rule of Criminal Procedure 11 is not a prerequisite to a valid waiver, see United States v. Michlin, 34 F.3d 896, 898 (9th Cir. 1994), the district court's oral pronouncements are also relevant, see United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990). Where the trial judge's unambiguous oral pronouncement differs from the written plea agreement, the oral pronouncement controls. See United States v. Buchanan, 59 F.3d 914, 917 (9th Cir. 1995). The Ninth Circuit places a ". . . premium on a defendant's ability to trust a district court's

statements. . . ." Anglin, 213 F.3d at 1067 (citing Buchanan, 59 F.3d at 917-18)).

In this case, movant does not challenge the validity of the plea agreement, which contains the following waiver: "The defendant . . . specifically agrees not to file a motion under 28 U.S.C. § 2255 . . . attacking his <u>conviction or sentence</u>." (emphasis added). The record reflects the following colloquy in the district court at the time the plea agreement was accepted:

> THE COURT: Do you . . . understand that although the Government may have the right to appeal from the sentence imposed by this Court, by virtue of the Plea Agreement that you have entered into, you will have waived, that is, given up your right to collaterally attack either your plea or to appeal any part of the sentence that may be imposed by this Court. Do you understand that?
>
> THE DEFENDANT: Yes.

Similarly, at the subsequent sentencing hearing, the judge stated that movant had given up his right to "collaterally attack the plea . . ." Movant focuses on the words "collaterally attack" and "plea" to conclude that he only gave up the right to challenge the plea agreement itself and not his right to challenge the underlying conviction which arose from the plea. He argues that the judge's description of the waiver supercedes the written plea agreement.

At the outset, the court rejects movant's overbroad statement of the rule concerning the trial judge's oral pronouncements. Oral pronouncements do not necessarily supercede an express waiver. They only do so where they are unambiguous. See Buchanan, 59 F.3d at 917.

As to the oral pronouncements in this case, the trial judge told movant that his plea agreement waived his right to "collaterally attack . . . your plea . . ." The judge also stated that movant had given up his right to "collaterally attack the plea . . ." The court finds that these pronouncements are not unambiguous in that they are susceptible to different interpretations. On the one hand, the phrase "attack the plea" could refer to movant's ability to argue that the plea

///

///

5

agreement itself is not valid because, for example, it was not knowing or voluntary.[1] On the other hand, the phrase could refer to the guilty plea or, in other words, the conviction resulting from movant's guilty plea. Because the oral pronouncements in this case are susceptible to more than one interpretation, movant could not have formed any one particular expectation based on them. To the point, movant could not have formed the one specific expectation he asserts – that he was only giving up his right to challenge the plea agreement.

Moreover, the court notes that the district judge did not use the phrase "plea agreement" which would be consistent with an unambiguous oral pronouncement that the waiver applied only to a challenge to the validity of the agreement itself. Rather, the district judge used the word "plea." This also suggests that movant could not have formed an expectation that the waiver applied only in the limited way he suggests.

The court finds that the plea agreement is valid and enforceable. A review of the transcript reflects that it was entered into knowingly and voluntarily, and movant does not argue otherwise. Additionally, the court finds that the district judge's oral pronouncements as to movant's § 2255 rights do not serve to supercede the express language of the written plea agreement. Respondent's motion to dismiss movant's § 2255 motion should be granted.

### B.   Procedural Default

Respondent also argues that the § 2255 motion should be dismissed because movant procedurally defaulted by not raising his claim on direct appeal. A claim may not be raised by way of a motion under 28 U.S.C. § 2255 if the claim was not first presented on direct appeal. See Bousley v. United States, 523 U.S. 614 (1998); United States v. Dunham, 767 F.2d 1395 (9th Cir. 1985). If, however, the movant can demonstrate cause and prejudice for the

---

[1] While this is a possible interpretation, it is not particularly reasonable. This "waiver" would be meaningless because a defendant can always challenge the validity of a plea agreement. In fact, the trial judge specifically told movant at the sentencing hearing that he could challenge the validity of the waiver on direct appeal. So, it would not be reasonable for movant to think that he had waived that right.

default or actual innocence, the claim may be heard.  See Bousley, 523 U.S. at 622.  Procedural default does not apply to claims of ineffective assistance of counsel because such claims are properly raised in a § 2255 motion and not on direct appeal.  See United States v. Pirro, 104 F.3d 297, 299 (9th Cir. 1997).

        Here, movant appears to concede that he procedurally defaulted.  His only argument in opposition on this issue is that "[a]ny procedural default in not raising the issue on appeal can be excused by a showing of actual innocence."  Movant argues that he is actually innocent because the facts as set forth in the plea agreement do not constitute the charged criminal violations.   As respondent notes, there is no difference between "actual innocence" and "factual innocence."  See Bousley, 523 U.S. at 623.  Actual (or factual) innocence requires a showing of evidence not presented at trial.  See Schlup v. Delo, 513 U.S. 298, 324 (1995).  Actual innocence is, therefore, different from a claim of legal innocence where the defendant argues that the facts are legally insufficient to establish the charged violation.  Given that movant does not challenge the underlying facts, the court concludes that he is not presenting a claim of actual (or factual) innocence.  Instead, movant's claim is based on the notion of legal innocence.

        Because movant does not make a showing of actual innocence or otherwise argue cause and prejudice, the court agrees with respondent that the § 2255 motion must be dismissed due to procedural default.  While any direct appeal would have probably been dismissed based on the waiver, filing such an appeal could have avoided the procedural default.

### III.  CONCLUSION

        Based on the foregoing, the undersigned recommends that:

        1.        Respondent's motion to dismiss (Doc. 591 in the criminal docket) be granted; and

        2.        Movant's 28 U.S.C. § 2255 motion be dismissed.

/ / /

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   June 8, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE